FILED
2014 Mar-31  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **OMAR F. MOUSA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 7:12-CV-03008-MHH** |
| **THE BOARD OF TRUSTEES** | ) | |
| **OF THE UNIVERSITY OF** | ) | |
| **ALABAMA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Omar Mousa filed a complaint on September 19, 2012 against the University of Alabama and numerous individual defendants. On December 12, 2013, this Court dismissed, without prejudice, Mr. Mousa's claims against all defendants except Todd Borst and Samuel Evers. University employees Borst and Evers have asked the Court to dismiss Mr. Mousa's claims against them. Mr. Mousa, who is acting *pro se*, has not responded to the defendants' motion to dismiss.

Mr. Mousa purports to bring this action pursuant to 42 U.S.C. § 1983. The Court finds that Mr. Borst and Mr. Evers are entitled to qualified immunity on Mr.

Mousa's § 1983 claims.[1]  Furthermore, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Mr. Mousa's state law claims. Therefore, the Court grants the pending motion to dismiss.  (Doc. 13).

## Legal Standard:

The motion to dismiss that Mr. Borst and Mr. Evers filed covers a lot of territory.  It is based, in part, on the affirmative defense of qualified immunity.  A court may dismiss an action to pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis of qualified immunity.  *Manzini v. The Florida Bar*, 511 Fed. Appx. 978, 983 (11th Cir. 2013) ("Manzini also argues that because 'qualified immunity is an affirmative defense,' that issue should have been decided at the summary judgment stage and not on a motion to dismiss, but he is wrong. *See, e.g., Nolen v. Jackson,* 102 F.3d 1187, 1191 (11th Cir. 1997) (reversing the

---

[1] The Court dismisses Mr. Mousa's claims against Mr. Borst and Mr. Evers on the merits; however, the Court could dismiss the complaint because it does not comply with the requirements of Federal Rule of Civil Procedure Rule 8 as interpreted in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662.  Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Mr. Mousa's complaint is 32 pages long; it contains 12 counts.  (Doc. 1).  The factual allegations are muddled and confusing.  Attached to the complaint are two exhibits totaling 156 pages.  (Docs. 1, 1-1, 1-2).  Ordinarily, the Court would dismiss such a complaint without prejudice and allow Mr. Mousa to re-plead.  *See generally*, *Thomas v. Am. Tobacco Co.*, 173 F.R.D. 546, 547 (M.D. Ga. 1997) (dismissing complaint without prejudice where complaint was "needlessly lengthy, verbose, and repetitious"); *Kleinschmidt v. Liberty Mut. Ins. Co.*, 142 F.R.D. 502, 504 (S.D. Fla. 1993) (dismissing complaint without prejudice because "anfractuous prose" made claims difficult to decipher); *Gordon v. Green*, 602 F.2d 743, 745 (5th Cir. 1979) (urging district courts to dismiss complaints that are unintelligible, verbose, or scandalous).  Here, even if the complaint could clear Rule 8's procedural hurdle, Mr. Mousa's factual assertions do not entitle him to relief as a matter of law.  Therefore, the Court dismisses Mr. Mousa's claims with prejudice.

district court's denial of defendant's motion to dismiss on grounds of qualified immunity)."); *Bloom v. Alvereze*, 498 Fed. Appx. 867, 872 (11th Cir. 2012) ("a defense of qualified immunity may be addressed in a motion to dismiss, which will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'") (quoting *St. George v. Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir. 2002)).

The Court must interpret *pro se* pleadings liberally, but it "may not serve as de facto counsel for a party . . . or rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). The Court draws all "reasonable inferences" in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

**Facts:**

Mr. Mousa's claims relate to his work as a doctorate student and graduate research assistant at the University of Alabama. (Doc. 1, p. 3, ¶ 10). In 2009, Mr. Mousa and Dr. Bruce C. Kim, one of Mr. Mousa's advisors, had a dispute regarding their research and Mr. Mousa's academic performance. (Doc. 1, p. 3, ¶¶ 11-12; Doc. 1, p. 9, ¶ 25). Ultimately, Mr. Mousa resigned his position as a research assistant and filed grievances against Dr. Kim. (Doc. 1, p. 3, ¶ 12). An inquiry committee was formed and recommended that the University not conduct a full investigation. (Doc. 1-1, p. 3).

Seeking further review, Mr. Mousa went "to the provost office Judy Bonner [sic]." (Doc. 1, p. 4, ¶ 14). After ordering a new investigation, Ms. Bonner sided with Mr. Mousa, sanctioned Dr. Kim, and ordered that Mr. Mousa's name be added to two of Dr. Kim's published articles. (*Id.*) Despite this order, Mr. Mousa has yet to be credited for his contributions to the two articles. (*Id.*) Further, the University has not acted on Mr. Mousa's age and ethnicity discrimination charges against Dr. Kim. (*Id.*)

According to Mr. Mousa, Dr. Jaber Abu-Qahouq[2] also mistreated him. (Doc. 1, p. 4, ¶ 15). First, Dr. Abu-Qahouq misused two of Mr. Mousa's inventions, a 3D solar cell using carbon nanotubes and a millimeter wave generator

---

[2] Although not entirely clear from Mr. Mousa's complaint, Dr. Abu-Qahouq appears to be a University professor or employee.

using carbon nanotubes. (Doc. 1, p. 4, ¶¶ 15-16). Although these inventions were solely Mr. Mousa's, the University funded Dr. Abu-Qahouq's research in these areas. (*Id.*) Dr. Abu-Qahouq, with "reckless intent[]," filed for patents on two more of Mousa's inventions without crediting him. (Doc. 1, p. 6, ¶ 19).

Eventually, Mr. Mousa filed academic grievances against Dr. Abu-Qahouq for academic misconduct and requested that Dr. Abu-Qahouq be removed from his PhD committee. (Doc. 1, p. 6, ¶ 20). Mr. Mousa contends that Dr. Abu-Qahouq responded to the charges by conspiring with other University officials and convincing several students to lie about Mr. Mousa to the Student Judicial Affairs Office ("SJAO"). (Doc. 1, pp. 6-7, ¶ 21-22). Dr. Kim purportedly followed suit.[3] (Doc. 1, p. 10, ¶ 26). Mr. Mousa claims that these acts were in retaliation for the grievances he filed against Drs. Kim and Abu-Qahouq. Todd Borst, the head of the SJAO, began an investigation into Mr. Mousa's alleged misconduct.

Mr. Mousa challenged the evidence against him in the SJAO proceedings and asked that the SJAO file academic misconduct charges against the students. (Doc. 1, p. 10, ¶ 27). Mr. Borst decided to drop the entire investigation citing insufficient information. (Doc. 1-1, p. 65).

In September 2011, the University placed Mr. Mousa on interim suspension. (Doc. 1, p. 20, ¶ 49; Doc. 13-1, p. 1). At some point during this course of events,

---

[3] The chronology of these and other events that Mr. Mousa describes in his complaint is unclear.

the University purportedly accused Mr. Mousa of forging Mr. Evers's[4] signature on two letters in which the University allegedly rejected Mr. Mousa's application for an instructor position in the math department.  (Doc. 1, p.  24, ¶ 54; Doc. 1-2, pp. 45-47).  After an informal hearing to review the suspension, Mr. Borst and the University determined that Mr. Mousa would remain suspended until a formal hearing could be held.  Mr. Borst refused Mr. Mousa's requests for information that Mr. Mousa planned to use to prepare his defense to the forgery allegations.  Mr. Mousa declined to attend the formal hearing, choosing instead to prepare the present suit.  (Doc. 1, pp. 20-21, ¶ 49-50; Doc. 13-1, Doc. 13-1, p. 5).

**Discussion:**

**I. Federal Causes of Action – Qualified Immunity**

"Qualified immunity protects government officials performing discretionary functions from civil trials ... and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."   *Santamorena v. Georgia Military Coll.*, 147 F.3d 1337, 1339-40 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir. 1994)).

---

[4] Although Mr. Mousa does not say so explicitly in his complaint, it appears that Mr. Evers is a University math department professor or employee.

The Eleventh Circuit uses a burden-shifting test to determine if a state official is entitled to qualified immunity.  "[T]he public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks and citation omitted).  Here, Mr. Borst and Mr. Evers are state officials because they are University employees.  Mr. Borst is the head of the Student Judicial Affairs Office.  (Doc. 1, p. 7, ¶ 22).  Mr. Evers is employed in the University's math department.  (Doc. 1, pp. 24-25, ¶¶ 54-55).  Mr. Mousa concedes that "at all times … INDIVIDUAL DEFENDANTS … were the agents and employees of UA OR STUDENTS and … were acting within the course and scope of such agency."  (Doc. 1, p. 2, ¶ 7).  Mr. Borst's participation in the University's investigation of Mr. Mousa was within his discretionary authority as a University employee.  So too was Mr. Evers's conduct with respect to two letters he purportedly authored.[5]  Mr. Borst and Mr. Evers have demonstrated that they were acting within their discretionary authority.  *See Braswell v. Bd. of Regents of Univ. Sys. of Ga.*, 369 F. Supp. 2d 1371, 1377 (N.D. Ga. 2005) (similar allegation in a complaint indicated that the defendants were acting within their discretionary authority).

---

[5] Although the University asserts that Mr. Mousa forged Mr. Evers's signature on the letters, for purposes of ruling on the defendants' motion to dismiss, the Court assumes that Mr. Evers wrote the two rejection letters because the Court must view the facts in the light most favorable to Mr. Mousa.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard*, 311 F.3d at 1346. The plaintiff must "demonstrate: first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional [or statutory] violation by the officers, and, second, that it was clearly established at the time of the incident that the actions of the defendant" violated the plaintiff's rights. *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (citation omitted); *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998). The Court has the discretion to determine which part of this requirement to address first. *Id*. "'[I]f [the plaintiff's] complaint fails to allege a violation of a clearly established [] right,'" then dismissal is warranted under Rule 12(b)(6). *Santamorena*, 147 F.3d at 1340 (quoting *Williams v. Alabama State Univ.,* 102 F.3d 1179, 1182 (11th Cir. 1997)).

In this case, in his claims against Mr. Borst or Mr. Evers, Mr. Mousa has not identified a violation of a clear constitutional right. Thus, Mr. Borst and Mr. Evers are entitled to qualified immunity for all of Mr. Mousa's § 1983 claims against them. These claims appear in Counts Six, Seven, Nine, and Eleven of the complaint. (Doc. 1, pp. 19-30).

**A. Borst**

Count Six

In Count Six, Mr. Mousa alleges that Mr. Borst "denied the Plaintiff right [sic] to go to campus to file for disability and discrimination charges."  (Doc. 1, p. 19, ¶ 47).  An email exchange between Mousa and Borst states, in relevant part:

> Mousa: Also, I want permission to come on campus to file for wrongful termination and back pay.
>
> Borst: I have the information that you have given me regarding Yuncong and it is being investigated and entered into our system.  We are handling it as we do all alleged incidents on campus.  I will get back to you on the other matters in your e-mail.

(Doc. 1-2, pp. 30, 34).[6]  It is not clear what federal right Mr. Mousa is alleging Mr. Borst violated.  He does not cite – and the Court is unaware of – any statutory or constitutional right requiring Mr. Borst to give Mr. Mousa permission to enter the University campus to "file for wrongful termination and back pay."  Mr. Mousa has not demonstrated that Mr. Borst's actions constituted a violation of a "clearly established" federal right.

Counts Seven and Nine

In Count Seven, Mr. Mousa alleges that the University, Mr. Borst, and two other individuals conspired to unjustly suspend him from the University.  Mr.

---

[6] This email appears in the exhibits that Mr. Mousa attached to his complaint.

Borst's role in this purported conspiracy relates to a hearing that preceded the suspension:

> At the hearing the plaintiff humiliated Borst for the stupidity and the flaws of the alleged allegation (the hearing was recorded). At the hearing the Plaintiff was able to show that no investigation whatsoever has been done by Borst. Borst just simply took the statement of Qahouq, Jiang, and Arikatla without questioning the validity of the arguments (the recording is self-evident to show zero efforts was [sic] done to deduce the truth). As a result of the first hearing[,] Borst trimmed the 20 pages frivolous allegations to less than one page at the final hearing ….

(Doc. 1, p. 20, ¶ 49).[7]  Prior to the hearing, Mr. Borst allegedly refused to provide materials to Mr. Mousa such as authentic copies of Ms. Farley's and Mr. Evers's signatures, so that Mr. Mousa could "prepare for his defense."  (Doc. 1, pp. 20-21, ¶ 49).

In Count Nine, Mr. Mousa explains in greater detail the information that he sought for his defense.  (Doc. 1, p. 25).  He contends that Mr. Borst refused to provide a "template of the Sam Evers real signature," so that Mr. Mousa could hire a handwriting analyst to prove that he did not forge Mr. Evers's signature on a letter that appears on University stationery.

Mr. Mousa alleges that the charge that he forged rejection letters from the University's math department were "fabricated after the Plaintiff lodged his

---

[7] When suggesting that the allegations were "trimmed," Mr. Mousa appears to be referring to a letter from Mr. Borst informing him that his suspension would continue until the formal hearing. (Doc. 1, p. 20, ¶ 49).

complaints (two grievances) and it was in furtherance of act of retaliation and suppression of the Plaintiff's right."  (Doc. 1, p. 25).  He states that the actual signatures of Ms. Farley and Mr. Evers would "break the whole case apart" and make "the conspiracy theory … very obvious to see and prove."  (Doc. 1, p. 25, ¶ 55).  Mr. Mousa also alleges that other, unnamed students, presumably not those he is suing, can confirm that the signatures are authentic.  (Doc. 1, p. 25, ¶ 54).

Liberally construing Mr. Mousa's complaint, the Court reads into Counts Seven and Nine a § 1983 claim against Mr. Borst for violation of due process under the Fourteenth Amendment.  Essentially, Mr. Mousa complains that Mr. Borst's failure to provide a "template" of Mr. Evers's signature deprived Mr. Mousa of a fair hearing prior to his suspension.  Students' "rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial."  *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987).  Mr. Mousa does not explain why he was entitled to templates of Mr. Evers's signature or how the University's judicial proceeding violated his right to a fair hearing.  He simply offers the conclusory allegation that copies of Ms. Farley's and Mr. Evers's signatures would "break the whole case apart."  To the extent Counts Seven and Nine contain an allegation that Mr. Borst violated Mr. Mousa's constitutional rights, the constitutional right is not "clearly established" based on the bald allegations in Mr. Mousa's complaint.

<u>Count Eleven</u>

In Count Eleven, Mr. Mousa alleges that Mr. Borst should have recused himself from the University proceedings against Mr. Mousa because of Mr. Borst's "vindictive motivation." (Doc. 1, p. 29, ¶ 61). Mr. Mousa also repeats his allegation that Mr. Borst should have supplied "documents pertaining to [Ms.] Farley and [Mr.] Evers signature [sic], among others." (Doc. 1, p. 29, ¶ 61). Additionally, Mr. Mousa contends that the University and Mr. Borst's failure to charge another student, Yuncong Jiang, with piracy evidences their selective prosecution of Mr. Mousa. (Doc. 1, p. 6, ¶ 21; Doc. 1, p. 29, ¶ 62). To support this allegation, he points to *United States v. Armstrong*, 517 U.S. 456 (1996). There, the Supreme Court stated:

> One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 694–695, 98 L.Ed. 884 (1954), is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

*Armstrong*, 517 U.S. at 464. Mr. Mousa then asks the Court to award damages and "make[s] request to this [C]ourt to investigate criminal act of piracy and upon finding Jiang guilty of the above crime, Jiang shall be deported to China." (Doc. 1, p. 30).

Mr. Mousa has not alleged a clear violation of his constitutional rights.  The University cited Mr. Mousa for rule violations and other incidents.  (*See* Doc. 13-1). The University gave Mr. Mousa the opportunity to make a response to the charges at multiple hearings.  *See Nash*, 812 F.2d at 664 ("Due process requires that [students] have the right to respond.").

Mr. Mousa has not alleged that the University's judicial proceedings were "directed so exclusively against a particular class of persons ... with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law."  *Armstrong*, 517 U.S. at 464-65 (internal quotations and citations omitted).  He has not alleged that Jiang was "similarly situated."  *Id.* at 465 (noting that "similarly situated individuals" must not be prosecuted for a selective prosecution claim).  Furthermore, the e-mails attached to the complaint indicate that Mr. Borst was "handling [Jiang's case] as [the University] do[es] all alleged incidents on campus."  (Doc. 1-2, pp. 30, 34).  Mr. Mousa has not asserted facts that support his bald allegation that the disciplinary action taken against him and the lack thereof against Jiang violated Mr. Mousa's right to equal protection of the law, assuming for argument's sake, that that constitutional right applies to a state university proceeding.

Because Mr. Mousa has not alleged that Mr. Borst violated a clearly established federal rights, Mr. Borst is entitled to qualified immunity for all causes of action under § 1983.

### B. Evers

Count Nine is the only cause of action alleged against Mr. Evers.  Mr. Mousa does not allege that Mr. Evers did anything other than sign the letters that the University accused Mr. Mousa of forging.  Signing the letters does not implicate one of Mousa's "clearly established" constitutional rights.  Therefore, Mr. Evers is entitled to qualified immunity.

## II. States Causes of Action – Supplemental Jurisdiction

Citing California labor law and Missouri Supreme Court cases, Mr. Mousa attempts to assert various state law claims against Mr. Borst and Mr. Evers.  (Doc. 1, pp. 18, 21).  To the extent that these claims are justiciable, the Court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c).[8] Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
>
> …

---

[8] In his complaint, Mr. Mousa cites 28 U.S.C. § 1332 as a basis for subject matter jurisdiction. (Doc. 1, p. 2).  The Court does not have diversity jurisdiction under 28 U.S.C. § 1332 because Mr. Mousa and the individual defendants are residents of Alabama.  (Doc. 1, p. 2, ¶¶ 2, 6).

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court has dismissed all claims which arguably could have triggered the Court's original jurisdiction under 28 U.S.C. § 1331. The Court also finds that this case involves "compelling reasons [to] declin[e] jurisdiction." 28 U.S.C. § 1367(c)(4). Mr. Mousa has a history of initiating and failing to prosecute similar lawsuits.[9] For example, in October 2002, Mr. Mousa brought twenty tort claims against over 60 defendants in the District Court for the Northern District of California. (Doc. 13-7, pp. 2-20). He failed to respond to the Court's submission orders. (Doc. 13-7, p. 28). In that complaint, Mr. Mousa alleged that a deputy district attorney falsified reports, encouraged witnesses to lie and conspired with a correctional officer to murder to him. (Doc. 13-7, pp. 15-16).

In June 2006, Mousa filed another complaint in federal court against, among others, the State of California and the Santa Clara District Attorney. (Doc. 13-11, pp. 5-18). Consistent with his other complaints, Mr. Mousa alleged that the parties had a "personal vendetta against [him]" and that the district attorney "falsely imprisoned" him and bribed state's witnesses. (Doc 13-11, pp. 18, 12, 2-3). The

---

[9] The Court may take judicial notice of these courts documents on a motion to dismiss. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action.").

Court finds that Mr. Mousa's litigation history supports the Court's refusal to exercise supplemental jurisdiction over Mr. Mousa's state law claims.[10]

**Conclusion:**

For these reasons, the Court grants Mr. Borst and Mr. Evers's motion to dismiss.  The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this 31st day of March, 2014.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[10] The Court notes that Mr. Borst and Mr. Evers likely also would be entitled to dismissal of the state law claims on the basis of sovereign immunity and state-agent immunity.